IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

TOMMY ANTHENY BALDONADO,

    Plaintiff,

v.                                                                                     1:16-cv-00981-LF

NANCY A. BERRYHILL,[1] Acting Commissioner
of the Social Security Administration,

    Defendant.

## **MEMORANDUM OPINION AND ORDER**

THIS MATTER comes before the Court on plaintiff Tommy Antheny Baldonado's Motion to Reverse and Remand to Agency for Rehearing, with Supporting Memorandum (Doc. 20), which was fully briefed on June 15, 2017. *See* Docs. 21, 25, 26. The parties consented to my entering final judgment in this case. Docs. 4, 7, 8. Having meticulously reviewed the entire record and being fully advised in the premises, I find no error in the Administrative Law Judge's ("ALJ's") finding that Mr. Baldonado is capable of returning to his past relevant work. I therefore find that Mr. Baldonado's motion is not well-taken and will deny it.

### I.     **Standard of Review**

The standard of review in a Social Security appeal is whether the Commissioner's final decision[2] is supported by substantial evidence and whether the correct legal standards were

---

[1] Nancy A. Berryhill, the new Acting Commissioner of Social Security, is automatically substituted for her predecessor, Acting Commissioner Carolyn W. Colvin, as the defendant in this suit. FED. R. CIV. P. 25(d).

[2] The Court's review is limited to the Commissioner's final decision, 42 U.S.C. § 405(g), which generally is the ALJ's decision, 20 C.F.R. §§ 404.981, 416.1481, as it is in this case.

applied. *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008). If substantial evidence supports the Commissioner's findings and the correct legal standards were applied, the Commissioner's decision stands, and the plaintiff is not entitled to relief. *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004). "The failure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (internal quotation marks and brackets omitted). The Court must meticulously review the entire record, but may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley*, 373 F.3d at 1118. A decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Id.* While the Court may not reweigh the evidence or try the issues de novo, its examination of the record as a whole must include "anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005). "'The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the] findings from being supported by substantial evidence.'" *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quoting *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

II.     **Applicable Law and Sequential Evaluation Process**

To qualify for disability benefits, a claimant must establish that he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be

expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a).

When considering a disability application, the Commissioner is required to use a five-step sequential evaluation process. 20 C.F.R. §§ 404.1520, 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). At the first four steps of the evaluation process, the claimant must show: (1) the claimant is not engaged in "substantial gainful activity;" (2) the claimant has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; *and* (3) the impairment(s) either meet or equal one of the Listings[3] of presumptively disabling impairments; *or* (4) the claimant is unable to perform his or her "past relevant work." 20 C.F.R. §§ 404.1520(a)(4)(i–iv), 416.920(a)(4)(i–iv); *Grogan*, 399 F.3d at 1260–61. If the claimant cannot show that his or her impairment meets or equals a Listing but proves that he or she is unable to perform his or her "past relevant work," the burden of proof shifts to the Commissioner, at step five, to show that the claimant is able to perform other work in the national economy, considering the claimant's residual functional capacity ("RFC"), age, education, and work experience. *Id.*

### III. Background and Procedural History

Mr. Baldonado was born in 1954, graduated from high school, and worked as a sign maker, a sign shop supervisor, and also performed general maintenance. AR 67, 179, 201, 206. Mr. Baldonado filed applications for disability insurance benefits and supplemental security income on February 26, 2013—alleging disability since February 1, 2013 due to chronic pain, back pain, knee pain, and shoulder pain. AR 77–78, 197, 200. The Social Security Administration ("SSA") denied his claims initially on October 3, 2013. AR 115–19. The SSA

---

[3] 20 C.F.R. pt. 404, subpt. P, app. 1.

denied his claims on reconsideration on October 24, 2013. AR 121–26. Mr. Baldonado requested a hearing before an ALJ. AR 131–32. On January 28, 2015, ALJ Eric Weiss held a hearing. AR 23–76. ALJ Weiss issued his unfavorable decision on March 18, 2015. AR 7–22.

At step one, the ALJ found that Mr. Baldonado had not engaged in substantial, gainful activity since February 1, 2013, his alleged onset date. AR 12. At step two, the ALJ found that Mr. Baldonado suffered from the following severe impairments:

> lower back pain (suspected b/1 pars defects at L5 associated with grade one spondylolisthesis on the S1 and degenerative change at the L5-S1) and left knee pain (lateral patellar tilt with suspected patellar chondral degeneration (20 CFR 404.1520(c) and 416.920(c)).

*Id.* At step three, the ALJ found that none of Mr. Baldonado's impairments, alone or in combination, met or medically equaled a Listing. AR 13. Because the ALJ found that none of the impairments met a Listing, the ALJ assessed Mr. Baldonado's RFC. AR 13–16. The ALJ found Mr. Baldonado had the RFC to

> perform light work as defined in 20 CFR 404.1567(b) and 416.967(b). He can lift, carry, push or pull twenty pounds occasionally, ten pounds frequently. He can stand and/or walk for six hours in an eight-hour workday and sit for two hours in an eight-hour workday with normal breaks. He can occasionally climb ramps and stairs, but must never climb ladders, ropes, or scaffolds. He can occasionally balance, stoop, kneel, and crouch, yet he must never crawl. Further, he must avoid more than occasional exposure to extreme cold, and must never be exposed to unprotected heights.

AR 13.

At step four, the ALJ concluded that Mr. Baldonado was able to perform his past relevant work as a sign shop supervisor, and was therefore not disabled. AR 16. The ALJ made an alternate step five finding that Mr. Baldonado could perform jobs that exist in significant numbers in the national economy—such as repair order clerk. AR 17. On April 10, 2015, Mr. Baldonado requested review of the ALJ's unfavorable decision by the Appeals Council. AR 6.

4

On July 1, 2016, the Appeals Council denied the request for review. AR 1–5. Mr. Baldonado timely filed his appeal to this Court on September 1, 2016. Doc. 1.[4]

## IV.  Mr. Baldonado's Claims

Mr. Baldonado raises two arguments for reversing and remanding this case: (1) the ALJ's step four finding that he was capable of returning to his past relevant work as a sign shop supervisor is contrary to law and unsupported by substantial evidence; (2) the ALJ's alternate step five finding is not supported by substantial evidence. I find no error with the ALJ's step four finding, and affirm the ALJ's decision on this basis. Because I find no error at step four, I need not address the alleged error with the alternate finding at step five. *See Lax*, 489 F.3d at 1084 (internal citation omitted) ("If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary.").

## V.  Analysis

At step four, the ALJ found that Mr. Baldonado could return to his past relevant work as a sign shop supervisor. Mr. Baldonado argues this is error because "sign shop supervisor" does not accurately describe his past relevant work. Doc. 20 at 9. Alternatively, Mr. Baldonado argues that, even if sign shop supervisor accurately describes *a part* of his work, it does not describe *all parts* of his past work. *Id.* at 10. Mr. Baldonado asserts that the ALJ should have treated his past work as a "composite job"—one which has significant elements of two or more jobs, and therefore has no counterpart in the Dictionary of Occupational Titles ("DOT"). *Id.* The Commissioner responds that it was sufficient for the ALJ to find that Mr. Baldonado could perform the "job he did in the past, as it is generally performed in the national economy, even if the work does not exactly match the claimant's work as he actually performed it." Doc. 21 at 6.

---

[4] A claimant has 60 days to file an appeal. The 60 days begins running five days after the decision is mailed. 20 C.F.R. §§ 404.981, 416.1481; *see also* AR 2.

The Commissioner further asserts that the ALJ did not err in characterizing Mr. Baldonado's past work as a "sign shop supervisor" rather than as a "composite job." *Id.* at 6–8. The Commissioner is right.

At step four of the sequential evaluation process, Mr. Baldonado bears the burden of proving that his medical impairments prevent him from performing work he has performed in the past. *See Williams v. Bowen*, 844 F.2d 748, 751 & n.2 (10th Cir. 1988).[5] A claimant found capable of doing his or her past relevant work is not disabled. 20 C.F.R. §§ 404.1520(f); 416.920(f). An ALJ may assess whether or not a claimant retains the ability to perform his or her past relevant work using any of the three following tests:

1. Whether the claimant retains the capacity to perform a past relevant job based on a broad generic, occupational classification of that job, e.g., "delivery job," "packaging job," etc. . . .

2. Whether the claimant retains the capacity to perform the particular functional demands and job duties peculiar to an individual job **as he or she actually performed it**. . . .

3. Whether the claimant retains the capacity to perform the functional demands and job duties of the job **as ordinarily required** by employers throughout the national economy.

SSR 82-61, 1982 WL 31387, at *1–*2 (S.S.A. 1982) (emphasis added). Past relevant work "includes a claimant's particular past relevant job, as well as the *type* of work claimant performed in the past, as that work is generally performed in the national economy." *Andrade v.*

---

[5] Step four of the sequential evaluation process is comprised of three phases:

In the first phase, the ALJ must evaluate a claimant's physical and mental residual functional capacity (RFC) . . . in the second phase, he must determine the physical and mental demands of the claimant's past relevant work . . . [and] [i]n the final phase, the ALJ determines whether the claimant has the ability to meet the job demands found in phase two despite the mental and/or physical limitations found in phase one.

*Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996) (internal citations omitted).

6

*Sec'y of Health & Human Servs.*, 985 F.2d 1045, 1051 (10th Cir. 1993) (emphasis in original). The claimant "bears the burden of proving his inability to return to his particular former job **and** to his former occupation as that occupation is generally performed throughout the national economy." *Id.* (emphasis added).

In this case, the ALJ relied on the third test outlined in SSR 82-61 to find that Mr. Baldonado retained the functional capacity to perform his past work as a sign shop supervisor, as that job is generally performed throughout the national economy. AR 16. The ALJ relied on vocational expert ("VE") testimony and the DOT's definition of "sign shop supervisor" in reaching this conclusion. AR 16, 67. The DOT lists sign shop supervisor as a "light" exertional job. *See* DOT 970.137-010, available at https://occupationalinfo.org/97/970137010.html (last accessed Feb. 22, 2018). Although the VE testified that, as Mr. Baldonado actually performed the job, the exertional demands were "closer to heavy," AR 67, this does not preclude the ALJ from finding that Mr. Baldonado still could perform the job at the light level, as it is generally performed in the national economy. Under SSR 82-61, an ALJ is permitted to rely on DOT descriptions to define how the job is usually performed. SSR 82-61, 1982 WL 31387, at *2.

> It is understood that some individual jobs may require somewhat more or less exertion than the DOT description.
>
> A former job performed . . . by the claimant may have involved functional demands and job duties significantly in excess of those generally required for the job by other employers throughout the national economy. Under this test, if the claimant cannot perform the excessive functional demands and/or job duties actually required in the former job but can perform the functional demands and job duties as generally required by employers throughout the economy, the claimant should be found to be "not disabled."

*Id.* Because Mr. Baldonado retained the RFC to do light work, AR 13, and the job of "sign shop supervisor" as generally performed requires "light" exertion, the ALJ did not err in concluding that he could perform his past relevant work as a sign shop supervisor. Mr. Baldonado failed to

meet his burden of proof at step four by "proving his inability to return . . . to his former occupation as that occupation is generally performed throughout the national economy." *Andrade,* 985 F.2d at 1051.

Mr. Baldonado argues that the ALJ incorrectly categorized his former occupation. Specifically, he argues that his past job was not a "sign shop supervisor," but was instead a "composite job." Doc. 20 at 10. "Composite jobs have significant elements of two or more occupations and as such, have no counterpart in the DOT." POMS DI 25005.020(B),[6] *Past Relevant Work (PRW) as the Claimant Performed It*, available at https://secure.ssa.gov/poms.nsf/lnx/0425005020 (last accessed Feb. 22, 2018). Because composite jobs have no counterpart in the DOT, it would be legal error for an ALJ to find that a claimant can perform a composite job "as generally performed in the national economy." *Id.* "The claimant's PRW may be a composite job if it takes multiple DOT occupations to locate the main duties of the PRW as described by the claimant."[7] *Id.*

In assessing whether an ALJ correctly categorized a claimant's occupation, an ALJ "may rely on the [DOT's] job description for claimant's job category as presumptively applicable to a claimant's prior work." *Andrade,* 985 F.2d at 1051 (internal citation and quotation omitted). A claimant may only overcome this "presumption that the [DOT's] entry for a given job title

---

[6] The Program Operations Manual System ("POMS") is "a set of policies issued by the Administration to be used in processing claims." *McNamar v. Apfel*, 172 F.3d 764, 766 (10th Cir. 1999). The Court "defer[s] to the POMS provisions unless [it] determine[s] they are 'arbitrary, capricious, or contrary to law.'" *Ramey v. Reinertson*, 268 F.3d 955, 964 n.2 (10th Cir. 2001) (quoting *McNamar*, 172 F.3d at 766).

[7] The VE did not rely on more than one DOT description to locate the main duties of Mr. Baldonado's past relevant work as a sign shop supervisor. AR 67. The VE did, however, find that Mr. Baldonado's past work in general maintenance was a composite job, or a combination of two occupations. *Id.* Because the VE clearly understood the use of multiple DOT numbers, it is obvious that the VE did not find that Mr. Baldonado's work as a sign shop supervisor fell under more than one DOT description.

8

applies to him by demonstrating that the duties in his particular line of work were not those envisaged by the drafters of the category." *Id.* at 1051–52 (internal citation and quotation omitted). This Mr. Baldonado has failed to do.

Mr. Baldonado argues that, even if "sign shop supervisor" was one component of his job, "the other component would be Sign Erector I, DOT #869.381-026, which is in the medium level of exertion; or Sign Erector II, DOT #869.684-054, which is in the heavy level of exertion." Doc. 20 at 10. The Court is not persuaded. The DOT defines the jobs of Sign Erector I and Sign Erector II as follows:

> CODE: 869.381-026
> TITLE(s): SIGN ERECTOR I (fabrication, nec) alternate titles: sign hanger
> Erects preassembled illuminated signs on buildings or other structures, according to sketches, drawings, or blueprints: Measures location for sign and marks points where holes for expansion shields are to be drilled, using measuring tape and chalk. Drills holes, using star drill. Drives expansion shield into hole with hammer, and secures lag bolts in shield, using wrench. Attaches hanging pole for sign to building front with lag bolts, and secures pole with guy wires attached from pole to lag bolts. Secures cornice hook on roof, rigs block and tackle, and hoists sign into position, or operates hydraulic boom to position sign. Secures sign to hanging pole with hooks. Makes electrical connections to power source and tests sign for correct operation. May prewire sign before installing. May use welding equipment when installing sign. May mount plastic signs with adhesives. May fabricate signs according to specifications and be designated Sign Maker (fabrication, nec).
>
> CODE: 869.684-054
> TITLE(s): SIGN ERECTOR II (fabrication, nec)
> Erects, assembles, and maintains roadside signs and billboards at designated locations, using handtools and power tools: Digs hole with post hole digger or shovel. Places wood or metal post in hole. Fills hole with cement and tamps cement to hold post in vertical position. Operates airhammer to drive channel-metal post into ground. Bolts, screws, or nails plywood or metal sign panels to sign post or frame, using handtools. Replaces worn and damaged signs. Repaints rusted signs. May erect metal sign support structure over highways. May operate banding machine to band signs on utility poles. May dismantle and number signs sections for transfer and reassembly at new locations and be designated Advertising-Display Rotator (business ser.)

DOT, Miscellaneous Construction Occupations, N.E.C., available at

https://occupationalinfo.org/defset17_3225.html (last accessed Feb. 22, 2018). Mr. Baldonado offers no explanation of how these job descriptions match the duties he performed. Having reviewed the record, the Court finds no evidence that Mr. Baldonado performed the duties listed in either of these jobs. There is no evidence that Mr. Baldonado erected signs. The Court therefore finds no merit to the argument that Mr. Baldonado's past work was a "composite job" that included components of either sign erector job.

On the other hand, the Court finds that substantial evidence supports the ALJ's finding that Mr. Baldonado's past relevant work was properly categorized as a "sign shop supervisor." AR 16. The DOT defines the duties of a sign shop supervisor as follows:

> Supervises and coordinates activities of workers engaged in constructing and painting signs: Reviews work orders and visits future site of sign to determine size of sign, materials needed to construct sign, and media needed to convey requested message. Orders material not already on inventory. Assigns work to PAINTER, SIGN (any industry) 970.381-026; SIGN ERECTOR (fabrication, nec) I 869.381-026; SIGN WRITER, HAND (any industry) 970.281-022; or other workers based upon current work load, priority of work to be completed, and expertise of available workers. Performs other duties as described under SUPERVISOR (any industry) Master Title. May prepare periodic department budget based upon knowledge of historic and projected costs of personnel, materials, and replacements and additions to tool and equipment inventory.

DOT # 970.137-010, available at https://occupationalinfo.org/97/970137010.html (last accessed Feb. 22, 2018). The DOT defines a SUPERVISOR (any industry) as follows:

> Supervises and coordinates activities of workers engaged in one or more occupations: Studies production schedules and estimates worker-hour requirements for completion of job assignment. Interprets company policies to workers and enforces safety regulations. Interprets specifications, blueprints, and job orders to workers, and assigns duties. Establishes or adjusts work procedures to meet production schedules, using knowledge of capacities of machines and equipment. Recommends measures to improve production methods, equipment performance, and quality of product, and suggests changes in working conditions and use of equipment to increase efficiency of shop, department, or work crew. Analyzes and resolves work problems, or assists workers in solving work problems. Initiates or suggests plans to motivate workers to achieve work goals.

10

> Recommends or initiates personnel actions, such as promotions, transfers, discharges, and disciplinary measures. May train new workers. Maintains time and production records. May estimate, requisition, and inspect materials. May confer with other SUPERVISORS (any industry) to coordinate activities of individual departments. May confer with workers' representatives to resolve grievances. May set up machines and equipment. When supervising workers engaged chiefly in one occupation or craft, is required to be adept in the activities of the workers supervised. When supervising workers engaged in several occupations, is required to possess general knowledge of the activities involved. Classifications are made according to process involved, craft of workers supervised, product manufactured, or according to industry in which work occurs. Classifications are made according to workers supervised.

Dictionary of Occupational Titles Master Titles and Definitions, available at https://occupationalinfo.org/masters_1.html (last accessed Feb. 22, 2018).

Mr. Baldonado's description of his job is consistent with the DOT description of a sign shop supervisor. Mr. Baldonado testified that he was a "production manager" and that he oversaw all operations of the sign manufacturing department:

> In fact, I started the sign department for this company. I oversee all operations from—from overseeing managing the production, the crews, inventory control, overseeing orders and seeing that they were done—overseeing the whole operations.

AR 37. He testified that he ordered all materials, and completed and submitted "material breakdown on the orders at the end of the month." AR 40, 56. He further testified that he oversaw other departments shipping in materials, customers picking up orders, and crews going out to install signs. AR 40. Mr. Baldonado supervised four employees. AR 37. In his supervisory capacity, he scheduled employees, signed employees' time sheets, hired and fired employees, and completed annual written employee evaluations. AR 57, 220. Mr. Baldonado also stated that he coordinated all the OSHA safety for his department. AR 57. Notably, in his work history report, Mr. Baldonado testified that he spent eight hours a day (a full work day) supervising people. AR 220.

Mr. Baldonado makes much of the fact that he did "cutting, lifting, manufacturing, and loading of signs" as part of his job. Doc. 20 at 9.[8] The Court acknowledges that the record shows that, as he performed his job as a sign shop supervisor, he assisted with the work, regularly lifted 60 to 80 pounds, and was on his feet a great deal of the time. AR 37–40. However, the fact that Mr. Baldonado performed his job as a sign shop supervisor at a heavy exertional level—a fact acknowledged by the VE—does not mean that he did not perform the job of a sign shop supervisor, or that he performed a "composite job." The regulations clearly acknowledge that "[a] former job performed . . . by the claimant may have involved functional demands and job duties significantly in excess of those generally required for the job by other employers throughout the national economy." SSR 82-61, 1982 WL 31387, at *2. While Mr. Baldonado has shown that he lacks the RFC to perform his past relevant work at the heavy level, as he actually performed it, he has not shown that he lacks the RFC to perform his past relevant work at the light level, "as it is usually performed." *Id.* Mr. Baldonado also has not shown that the ALJ incorrectly categorized his occupation. *Andrade*, 985 F.2d 1051.

This case similar to *Andrade*. In that case, a self-employed general contractor testified that, in addition to the usual light duties of a general contractor, as he actually performed his job, he also did very heavy construction work, such as plumbing and carpentry. *Id.* at 1050–51. The claimant in *Andrade* argued that "S.S.R. 82-61 does not authorize the ALJ to consider only the lighter duties of his past job; rather, when considering whether claimant could perform his job as

---

[8] Mr. Baldonado argues that he testified that "he would only spend an hour at most ordering materials, doing inventory control, or material breakdowns on orders at the end of the month." Doc. 20 at 9 (citing AR 40). It is unclear if Mr. Baldonado is arguing that he only spent an hour per month in total on these activities. Mr. Baldonado's actual testimony was that that he would sit "like, maybe 40 to an hour sometimes," not that he would spend only an hour per month on these duties. AR 40. In addition, Mr. Baldonado testified that when he was not sitting, he was overseeing the work of his department. *Id.*

it is performed in the national economy, the ALJ must categorize claimant's occupation in a way that reflects all significant aspects of claimant's particular past job—particularly that he performed carpentry and plumbing in addition to the usual duties of a general contractor." *Id.* at 1051. The Tenth Circuit rejected this argument, stating that "it is not enough to show that plumbing and carpentry were part of claimant's particular job: claimant must show that these demands are among the job duties of his type of job as that job is generally performed. Thus, claimant must show that the duties of his prior job were sufficiently distinct from the duties of a general contractor as described in the [DOT] to constitute a different line of work." *Id.* at 1052 (internal quotation, brackets and citation omitted).

As was true in *Andrade*, it is not enough for Mr. Baldonado to show that he did heavy manual labor as part of his past job. To prevail, Mr. Baldonado must show that his duties were distinct from that of a sign shop supervisor. Mr. Baldonado has failed to make this showing. The record supports the ALJ's conclusion that Mr. Baldonado was primarily a sign shop supervisor, "even though his particular job involved some actual labor." *Id*; *see also O'Dell v. Shalala*, 44 F.3d 855, 860 (10th Cir. 1994) (finding that, while claimant's previous job as a food preparation supervisor "as she performed it, may have included cooking duties, there is no evidence that the position of food preparation supervisor generally encompasses such duties. Claimant, therefore, has not demonstrated her inability to return to her former 'type' of work, as that job is generally performed."); *Adams v. Colvin*, 616 F. App'x 393, 395 (10th Cir. 2015) (unpublished) (finding that claimant failed to show that her position as a scanner operator was sufficiently distinct from the definition of the job listed in the DOT). Mr. Baldonado has failed to show that his job was distinct from the DOT description of sign shop supervisor, or that he cannot perform the job of sign shop supervisor, as that job is generally performed.

## VI. Conclusion

Mr. Baldonado has failed to show that the ALJ erred in finding he could return to his past relevant work as a sign shop supervisor.

IT IS THEREFORE ORDERED that Plaintiff's Motion to Reverse and Remand for a Rehearing (Doc. 20) is DENIED.

IT IS FURTHER ORDERED that the Commissioner's final decision is AFFIRMED.

_____
Laura Fashing
United States Magistrate Judge
Presiding by Consent